IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 23, 2014

**STATE OF TENNESSEE v. CORY MEEKS**

**Appeal from the Circuit Court for Marion County**
**No. 8990V1     Buddy D. Perry, Judge**

———————————

**No. M2013-02379-CCA-R3-CD - Filed July 14, 2014**

———————————

Defendant, Cory Meeks, appeals the trial court's revocation of his community corrections sentence and the imposition of a sentence of confinement. Following our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

B. Jeffery Harmon, District Public Defender; and Robert G. Morgan, Assistant Public Defender, Jasper, Tennessee, for the appellant, Cory Meeks.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; J. Michael Taylor, Jr., District Attorney General; David McGovern, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Defendant was convicted of theft over $1,000, operating a vehicle without headlights, and failure to comply with the financial responsibility law. He was sentenced to concurrent sentences of nine years for theft over $1,000, to be suspended to community corrections after one year, thirty days for operating a vehicle without headlights, and thirty days for failure to comply with the financial responsibility law.

A warrant for violation of community corrections was filed on April 3, 2013, alleging that Defendant had: (1) received new charges for possession of drug paraphernalia and simple possession of a Schedule II substance; (2) refused a drug screen; (3) failed to pay court costs, fines, and supervision fees as ordered; and (4) failed to complete community service work as ordered.

At the revocation hearing, Joe Greenwell testified that at the time of Defendant's arrest, he was the Chief Deputy of the Grundy County Sheriff's Office.

Deputy Greenwell arrested Defendant at the Grundy Courthouse for failure to appear at a pending trial for domestic assault. He testified:

> We placed [Defendant] in handcuffs and search incident to his arrest. In his pants pocket we found a hypodermic needle, and also a pack of Marlboro, and I believe it was at the - - I don't have my report with me to refresh my memory, but I do remember the pack of Marlboro, and then inside - - hidden inside that pack of Marlboro was a white substance that we - - and I believe, I think [Defendant] did say it was meth, methamphetamine.

Deputy Greenwell noted that Defendant was wearing the same clothing that Defendant was going to wear to trial that day.

On cross-examination, Deputy Greenwell testified that he spoke with Defendant on numerous occasions about Defendant's drug problem and Defendant's "desire to get a chance at rehab." He said that Defendant exhibited a desire to "change." Deputy Greenwell thought that Defendant had taken steps to get into a rehabilitation program by speaking with the jail

nurse and David Hodges of the "drug coalition." He was also aware of Defendant's interest in Teen Challenge.

Deputy Greenwell testified that there was one incident with Defendant at the jail during which Defendant was uncooperative, and Deputy Greenwell and the jail administrator were forced to use pepper spray to make Defendant comply. Deputy Greenwell testified that Defendant told him that the experience "opened his eyes." He felt that there was some potential for change with Defendant, and he noted that Defendant had a daughter that Defendant cared for deeply. Deputy Greenwell would not oppose efforts for Defendant to enter a treatment program.

Brent Basham, Defendant's community corrections officer, testified that he had asked another community corrections officer to administer a drug screen to Defendant in Bledsoe County. However, Defendant refused. On cross-examination, Mr. Basham testified that he thought the request was within a couple of hours after Defendant's arrest. He noted that Defendant had been "on the street" for a few hours before the request. Mr. Basham agreed that when Defendant had been arrested, he was found with drugs and drug paraphernalia, and Defendant was most likely under the influence at the time of the request.

Defendant testified that he was recently divorced and had two daughters ages five and sixteen. He said that his criminal history began when he was a juvenile. He noted that he began using drugs in the form of pills at approximately the age of fourteen. Defendant admitted that he also smoked "pot" and drank "beer and liquor." He began using methamphetamine at the age of sixteen. Defendant testified:

I'd go to prison and I'd come out, and I'll be good for three or four months and working hard and whenever my - - just like, I don't know if it's where life

don't go my way or what, but I have a bad habit of turning back to drugs, and methamphetamine is my main problem. When I get on it I lose all control of everything. I'm talking about people around the community don't even recognize me. I won't come around them. I'm not a worker like I have been. It's just destroying my life and I am tired of it.

Defendant testified that he had attempted to stop using drugs numerous times. He claimed that he "never had the opportunity to have no [sic] help from anybody." Defendant testified that he did not learn to stop using drugs while in prison because there were "more drugs in there than there are on the street." Defendant admitted that he had completed several programs including a "prerelease program" concerning drug abuse and anger management.

Defendant testified that he was last released from prison on December 11, 2012, and placed on community corrections. He noted that he had been on community corrections for what seemed like "all [his] life." Defendant testified that he met with Mr. Basham regularly for two or three months and worked two jobs. He then had a relapse with methamphetamine. Defendant testified:

And somebody rode with me to lunch one day and I told him I'd give him a ride, and he pulled some out and started smoking it in the car and I couldn't, I couldn't say no. I mean, it was just like a light switch going off on me.

I wished that I could get away from that stuff and never see it again. I want to be somewhere confined, you know, like away from here. I wished that I had the financial support for somebody to help me relocate away from this

mountain. I think that I would do good if I could relocate away from this mountain, but I need help first.

Defendant testified that he spoke with Deputy Greenwell, David Hodges, and several other officers about drug rehabilitation. Defendant contacted the director of Teen Challenge and sent in an application for the program. However, he was informed that he could not be accepted into the program until his pending criminal charges were taken care of.

On cross-examination, Defendant could not recall if he had felony charges in other states. He acknowledged that he was convicted of aggravated assault in 1999, but he did not recall carrying a weapon to a judicial proceeding in December of 1999. Defendant was asked about his conviction for reckless endangerment with a deadly weapon in 2005, to which he responded: "I'm sure they's [sic] plenty, sir. I mean, I'm not denies [sic] nothing that was said here today. I just know that I need the Court to help me." Defendant acknowledged that he was convicted of another aggravated assault in 2005, and he recalled that he received a four- year sentence. He was then released and stole a truck, which violated his probation.

Defendant did not recall where he obtained the methamphetamine that he brought to court for his trial on the domestic assault charge, and he admitted that he was under the influence of methamphetamine when he appeared for the trial.

At the conclusion of the revocation hearing, the trial court revoked Defendant's community corrections sentence and ordered him to serve the remainder of his nine-year sentence in confinement. In the order revoking Defendant's community corrections, the trial court noted that Defendant was "violated pursuant to new criminal conduct, specifically Defendant brought methamphetamine to a Jury Trial."

## II. Analysis

The decision to revoke a community corrections sentence or probation rests within the sound discretion of the trial court and will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation has occurred. *State v. Harkins*, 811 S.W.2d 79, 82-83 (Tenn. 1991)(applying the probation revocation procedures and principles contained in Tennessee Code Annotated section 40-35-311 to the revocation of a community corrections placement based upon "the similar nature of a community corrections sentence and a sentence of probation"). The trial court is required only to find that the violation of probation or community corrections occurred by a preponderance of the evidence. *See* T.C.A. § 40-35-311(e); *see also id.* § 40-36-106(e)(3)(B). In reviewing the trial court's findings, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). After finding a violation of a defendant's community corrections, the "court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community based alternative to incarceration." T.C.A. § 40-36-106(e)(4). If the trial court resentences a defendant to a more severe sentence than originally imposed, it must conduct a sentencing hearing in accordance with the 1989 Sentencing Act. *See State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998). When a trial court does not alter "the length, terms or conditions of the sentence imposed," a new sentencing hearing is not required. T.C.A. § 40-36-106(e)(2); *see State v. Samuels*, 44 S.W.3d 489, 493 (Tenn. 2001).

Defendant argues that the trial court abused its discretion in revoking his community corrections sentence because "it failed to reflect on all its options once it determined that a

violation had occurred. Specifically, the Defendant submits that the Court failed to adequately consider placement of the Defendant in a long term drug treatment program."

Based on our review of the record, we conclude that the trial court did not abuse its discretion in finding that Defendant had violated the conditions of his community corrections sentence and by ordering him to serve the remainder of his nine-year sentence in confinement. In considering the revocation, the trial court made the following findings:

> Probably nobody in this courtroom is any more mindful of trying to give folks another opportunity to get away from addiction, but I'm more mindful of the fact that after you reach a certain point in your criminal behavior you become a criminal, not just a criminal with an addiction.
>
> I think we have discovered through drug court that the folks that are - - their addiction is driving their criminal behavior, we can have some success with them. I don't think, based on the record I see here, that the addiction is driving the criminal behavior. I think the criminal behavior is there, and I just don't see on the record how I have any choice other then to revoke him and require him to serve his sentence.

The trial court in essence did consider whether placement of Defendant in a drug treatment program would be successful, and the court implicitly determined that it would not be successful given Defendant's criminal history and previous attempts at rehabilitation. Defendant is not entitled to relief on this issue.

For the foregoing reasons, the judgment of the trial court is affirmed.

_____

THOMAS T. WOODALL, JUDGE